JOHNSON v. FRED L. KIRCHER COMPANY.

1. COVENANTS—RESTRICTIONS NOT FAVORED—CONSTRUCTION.
   Restrictions are not favored in law and will not be enlarged or extended by construction.

2. SAME—BUILDING RESTRICTIONS—CONSTRUCTION.
   Building restrictions upon lots in a subdivision constitute reciprocal negative easements and as a general rule are construed against the grantor and those who claim under him.

3. DEEDS—INTENT.
   The supposed intention of parties to a deed cannot overcome their express agreement.

4. COVENANTS—CONSTRUCTION OF RESTRICTIONS.
   A restriction in a deed will not be enlarged or extended by construction even to accomplish what it may be thought the parties may have desired had a situation, which later developed, been foreseen by them at the time the restriction was written.

5. SAME—CONSTRUCTION OF RESTRICTIONS.
   The parties to a deed will be confined to the language employed in writing a restriction, where the language used is clear.

REFERENCES FOR POINTS IN HEADNOTES
[1, 6] 14 Am Jur, Covenants, Conditions and Restrictions, § 212.
[3–5] 14 Covenants, Conditions and Restrictions, § 211.
[7, 13] 14 Am Jur, Covenants, Conditions and Restrictions, § 215.
[8] 18 Am Jur, Eminent Domain, § 27; 38 Am Jur, Municipal Corporations, § 484.

6. SAME—CONSTRUCTION OF RESTRICTIONS.

Restrictions on the use of land will be construed strictly against those claiming to enforce them, and all doubts resolved in favor of the free use of the property.

7. SAME—RESTRICTIONS AGAINST CERTAIN BUSINESS USES—PUBLIC WAY.

Under restriction that "no shop, factory, store, saloon or business house of any kind, no asylum, hospital, or institution of like or kindred nature, shall be maintained upon any portion" of lot involved, the grantee thereof was not precluded from granting a public right of way through central portion of the lot from street in front to garage located upon land adjoining at the rear, as land was not restricted against use for a public way.

8. MUNICIPAL CORPORATIONS—ACQUISITION OF PROPERTY RIGHTS.

The power to acquire property rights and to construct boulevards, streets and alleys is vested in municipalities both by constitutional provision and by statute, and such property may be obtained either by purchase or condemnation (Const 1908, art 13, § 5; CL 1948, § 213.221).

9. SAME—STREETS—COURTS.

Courts have no power to determine what streets shall be opened and worked within a municipality, or when or how it shall be done.

10. SAME—STREETS—PRIVATE CITIZENS.

Private citizens cannot dictate to a city what shall be done in the line of public duty.

11. INJUNCTION—MUNICIPAL CORPORATIONS—ALLEYS—ZONING ORDINANCE.

Injunction to restrain city from constructing a driveway across lot in area zoned for use for residences, libraries, churches, and public community centers was not permissible where zoning ordinance did not and could not purport to authorize the establishment or discontinuance of the use of streets and alleys (Const 1908, art 13, § 5; CL 1948, § 213.221; Lansing Zoning Ordinance, § 5-C).

12. HIGHWAYS AND STREETS—ALLEYS—PUBLIC USE.

An alley which may be used by portion of public having occasion to frequent place of business on adjoining lot for business purposes may not be said to be for the sole benefit of the owners of such adjoining lot, especially where the use of such alley by such part of the public alleviates the

hazards and difficulties of ingress to or egress from such place of business which fronts on a thoroughfare having highly-congested vehicular and pedestrian traffic.

13. Injunction—Covenants—Alleys—Depreciation of Value—Nuisance—Evidence.

In suit by various owners of property in subdivision restricted against use for shop, factory, store, saloon, or business house of any kind, asylum, hospital or institution of like or kindred nature to restrain use of a 24-foot central portion of a lot for public alley from street to business place on adjoining land at rear of lot, relief was not justified under record presented, where proof failed to show a material depreciation in value of plaintiffs' properties or that use of the alley will constitute a common-law nuisance.

Appeal from Ingham; McDonald (Archie D.), J., presiding. Submitted February 10, 1950. (Docket No. 16, Calendar No. 44,604.) Decided April 3, 1950.

Bill by Floyd M. Johnson and others against Fred L. Kircher Company, a corporation, and others to enjoin the use of a strip of land as a public alley. Decree for plaintiffs. Defendants appeal. Reversed.

*Pierce, Planck & Ramsey,* for plaintiffs.

*Benjamin F. Watson,* for defendants Fred L. Kircher Company and United Auto Sales, Inc.

*Claude J. Marshall,* for defendant State Motors, Inc.

*Charles P. Van Note,* for defendant City of Lansing.

North, J. The issue in this equity suit is whether defendants may lawfully construct thereon and use as a public alley a strip of land approximately 24

feet in width, extending north from Eureka street through the central portion of vacant lot 5 of Ludwig Park Subdivision in the city of Lansing. This lot is owned by defendant corporation Fred L. Kircher Company. This company also owns lot 3 of Assessor's Plat No 17, which lot 3 adjoins lot 5 on the north and fronts through on East Michigan avenue. Garage buildings located on lot 3 are occupied by the other defendants (except the city of Lansing) as lessees or sublessors under the Kircher Company. The purpose of the alleyway is, at least primarily, to furnish means of ingress and egress for the lot 3 property to and from Eureka street, and has been used as such.

Plaintiffs are property owners in the Ludwig Park Subdivision, which is composed of lots numbered 1 to 70, inclusive, and two outlots, A and B. By reason of its being embodied in the respective conveyances of 57 of the lots in the Ludwig Park Subdivision each of such lots is subject to the restriction hereinafter noted, and as to three other lots reference to the restriction is made in the chain of title. It is stipulated that lots 62 to 70 of this subdivision have been deeded without reference to the restriction, and lot 54 appears to be unrestricted. While other grounds for injunctive relief are asserted by plaintiffs, primarily their contention on this appeal is that the establishment and contemplated use of the proposed alleyway would be in violation of the restriction. Hearing of the case resulted in plaintiffs being granted the equitable relief sought on that ground. Defendants have appealed.

Lot 5 and seven other lots of the Ludwig Park Subdivision are on the north side of Eureka street. The remainder of the subdivision lies south of Eureka street. The Kircher Company deeded to the city of Lansing a right of easement in the 24-foot strip of land extending north and south through the

central portion of lot 5 "for right of user as a street or way." This conveyance provided for reverter in event of discontinuance of the way, and was accepted by the city under an agreement that the grantor would bear the expense of grading, curbing and paving the alley, which work was to be done by the city. Lot 5 and, to the extent above noted, other lots of the Ludwig Park Subdivision are subject to the following restriction:

"No shop, factory, store, saloon, or business house of any kind, no asylum, hospital, or institution of like or kindred nature, shall be maintained upon any portion of said land by second party or any grantee."

It is important and indeed quite controlling to note the character of the above restriction in this respect. It is negative in character rather than affirmative. It does not specify that the use of the lots in the subdivision shall be for residential purposes only. Instead it is a provision which negatives the right to make certain uses of those lots as to which in the chain of title the restriction is embodied. The result is this, and only this, that on such lots there could not be maintained a shop, a factory, a store, a saloon, or a business house of any kind, nor could there be maintained an asylum, a hospital or like institution. It is obvious that any of these restricted lots might be utilized for various purposes other than those just above enumerated. For example, a church, a school building, or a library might be maintained on one of these lots without there being any semblance of violation of the restriction. Likewise a public playground might be established on one or more of the restricted lots without violating the quoted restriction. So the issue as to restricted rights narrows down to this: Is the construction and use of a public alley across

lot 5 of this subdivision a violation of the negative restriction above quoted? In reaching a conclusion we must be mindful of the following pertinent principles of law.

"Restrictions are not favored in law. They will not be enlarged or extended by construction." *Putnam* v. *Ernst,* 232 Mich 682, 688.

"Building restrictions constitute reciprocal negative easements and, as a general rule, are construed against the grantor and those who claim under him." *Boston-Edison Protective Association* v. *The Paulist Fathers, Inc.,* 306 Mich 253, 258 (148 ALR 364).

"The supposed intention of the parties cannot overcome their express agreement, 18 CJ, p 254; and a restriction will not be enlarged or extended by construction even to accomplish what it may be thought the parties may have desired had a situation, which later developed, been foreseen by them at the time the restriction was written. *Davidson* v. *Sohier,* 220 Mass 270 (107 NE 958). Where the language of the restriction is clear, the parties will be confined to the language which they employed. * * *

"It is the general rule that restrictions will be construed strictly against those claiming to enforce them and all doubts resolved in favor of the free use of the property. * * * The supposed intention of parties cannot overcome the express language of the restrictions in this case." *Moore* v. *Kimball,* 291 Mich 455, 460–462.

Under the facts of this case and the above quoted authorities the conclusion seems inescapable that the restriction involved in the instant case is not such as to negative the right of an owner of one of the restricted lots to grant a public right of way over the lot to the municipality in which the property is located, or to forbid the use of such public way. Hence, we conclude that the decree entered in the

circuit court cannot be sustained on the theory adopted by the trial judge.

Our decision of the foregoing issue is controlling of plaintiffs' alleged right to injunctive relief because of a restriction in a conveyance prior to platting of a parcel of land which included lot 5. That restriction, which provided: "No business house shall ever be erected on said premises," is literally included in the restriction already considered.

Plaintiffs also assert a right to the injunctive relief prayed on the ground that lot 5 of Ludwig Park Subdivision is within the area included in section 5-C of the zoning ordinance of the city of Lansing. For present purposes it is sufficiently accurate to note that the regulated uses permitted under section 5-C of the zoning ordinance are restricted to one-family or two-family dwellings, libraries, churches, community centers owned and operated by public agencies and "Institutions of the usual educational or religious nature." Plaintiffs contend that construction and use of this alleyway across lot 5 would be in violation of the zoning ordinance and for that reason plaintiffs ask that such construction and use by defendants be enjoined and that the action of the Lansing city council in accepting conveyance of the easement over the 24-foot strip across lot 5, which was conveyed after this suit was instituted but prior to the filing of plaintiffs' supplemental bill, "be vacated, set aside and held for naught" and "That said city of Lansing, its officers, agents and employees be permanently restrained and enjoined from constructing upon said Lot No 5 of Ludwig Park Subdivision a driveway across said lot."

We think plaintiffs' contention that they are entitled to injunctive relief on the ground just above noted is not tenable. This issue was not passed upon by the circuit judge; but our consideration thereof

on this appeal brings the conclusion that appellees' contention cannot be sustained for the following reasons:

The power to acquire property rights and to construct boulevards, streets and alleys is vested in municipalities both by constitutional provision and by statute. See Constitution 1908, art 13, § 5; CL 1948, § 213.221 [Stat Ann § 8.211]. The cited statute provides that private property for the noted purposes may be obtained by purchase or condemnation. In the instant case the right was obtained by a gratuitous grant. The scope of the power of municipalities in this field of the law, as against the rights of courts to intervene, was adjudicated in *Bauman* v. *City of Detroit,* 58 Mich 444, which involved the opening of a street, as follows:

"There is also a further vital objection to the frame of the bill. It attempts to invoke the aid of equity to interfere with the municipal control over the working of streets. It is not within the power of any court to determine what streets shall be opened and worked, or when or how it shall be done. A court of equity has no means or process to carry out any such order. And private citizens cannot dictate to a city what shall be done in the line of public duty."

It is to be noted that the zoning ordinance does not purport in any of its provisions to authorize the establishment of, or discontinuance of use of streets or alleys. It may well be questioned if a zoning ordinance which imposed restrictions in this field upon the powers of a municipality would not be violative of the constitutional provision above noted which vests municipalities with the powers of eminent domain incident to taking property "for the acquiring, opening and widening of boulevards, streets and alleys."

We cannot accept plaintiffs' assertion that this alley will be only for the sole benefit of the occupants or owners of lot 3 of Assessor's Plat No 17. Instead it is obvious that the way will be used, or at least may be used, by that portion of the public having occasion to frequent lot 3 for business purposes. And further, in providing for this alley the city council may, at least in part, have been motivated by the fact that this rear entrance to the business place on lot 3 is an effective means of alleviating the hazards and difficulties of ingress to or egress from the building on lot 3 which faces on East Michigan avenue, which admittedly is a thoroughfare on which there is rather highly congested vehicular and pedestrian traffic. We cannot accept as having any merit plaintiffs' contention that the use of this alleyway as a means of ingress to and egress from lot 3 will result in extending the business there carried on to lot 5 of Ludwig Park Subdivision and thereby the restriction hereinbefore noted will be violated.

Review of this record fails to disclose proof which would justify granting relief to plaintiffs on the ground that the use of the proposed alley will materially depreciate the value of their properties or that the use of the alley will constitute a common-law nuisance. In addition to other testimony pro and con touching the above issues, we are impressed by the fact that the owners respectively of the lot adjacent on the west to lot 5 and of the lot next east of lot 5, testified in effect that the use of the alley had not disturbed them or impaired the enjoyment of their homes, and they did not object to the use of the 24-foot strip across lot 5 as an alley.

The decree entered in the circuit court granting the equitable relief sought by plaintiffs is reversed, and a decree will be entered in this Court dismissing

plaintiffs' bill of complaint and denying the relief sought. Defendants will have costs of both courts.

BOYLES, C. J., and REID, DETHMERS, BUTZEL, CARR, BUSHNELL, and SHARPE, JJ., concurred.